| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |
| ------------------------------------------------------------------x | |
| In re: | Chapter 11 |
| ACTRADE FINANCIAL TECHNOLOGIES, LTD., et al., | Case No. 02-16212 (ALG) |
|               Debtors. | Jointly Administered |
| ------------------------------------------------------------------x | |
| THE ACTRADE LIQUIDATION TRUST, as<br>successors in interest to ACTRADE CAPITAL INC.,<br>and KENNETH P. SILVERMAN, as Chapter 7<br>Trustee of the Estate of ALLOU DISTRIBUTORS,<br>INC., | |
|               Plaintiffs, | |
|               v. | Adv. No. 09-01196 (ALG) |
| GREENWICH INSURANCE COMPANY, XL<br>REINSURANCE AMERICA (f/k/a NAC<br>REINSURANCE CORPORATION), and GREAT<br>AMERICAN INSURANCE COMPANY, | |
|               Defendants. | |
| ------------------------------------------------------------------x | |

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

SALISBURY & RYAN LLP
Counsel to Actrade Liquidation Trust
1325 Avenue of the Americas
New York, New York 10019
    By:  Patrick P. Salisbury, Esq.
          George B. Schwab, Esq.

SILVERMAN ACAMPORA, LLP
Counsel to Chapter 7 Trustee of Allou Distributors, Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
    By:  Edward M. Flint, Esq.

WOLFF & SAMSON PC
Counsel to Defendants
One Boland Drive
West Orange, New Jersey 07052
   By:  Kenneth Laptook, Esq.
          Andrew S. Kent, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Actrade Capital, Inc., one of the above-captioned debtors ("Actrade"), filed for relief under Chapter 11 of the Bankruptcy Code on December 12, 2002, and confirmed a plan of liquidation on January 7, 2004. Plaintiffs jointly filed this adversary proceeding on May 12, 2009, seeking a declaratory judgment that the Defendant Sureties are liable on four prepetition surety bonds aggregating $14 million (the "Bonds") issued in favor of Actrade. Before the Court is Plaintiffs' motion to strike Defendants' jury demand.

## BACKGROUND

The largest claim in the Actrade case was filed by the Chapter 7 Trustee (the "Allou Trustee") of Allou Distributors, Inc. ("Allou"), another debtor then and now in liquidation proceedings in the Eastern District of New York, Case No. 03-8232 (ESS). The Allou claim charges that $48 million in payments made by Allou to Actrade were fraudulent conveyances under the Bankruptcy Code and under applicable state law (the "Allou Claim"). The Allou Claim was converted into an adversary proceeding and the Actrade Liquidation Trust, successor-in-interest to Actrade, and the Allou Trustee (together, "Plaintiffs") entered into a settlement agreement dated February 19, 2009 (the "Allou Settlement").

The Allou Settlement provided for resolution of the Allou Claim for $14 million. It was a condition of the Allou Settlement that Actrade obtain said sum from sureties that had issued the

2

Bonds, which protected Actrade (as obligee) in the event Allou (as principal) did not satisfy its obligations to Actrade. The sureties include Greenwich Insurance Company, XL Reinsurance America (together, "Greenwich") and the Great American Insurance Company ("GAIC", and collectively with Greenwich, the "Sureties" or "Defendants"). The Sureties objected to the Allou Settlement, arguing that it could not be imposed on them and that, among other things, Greenwich had been released by Actrade from liability on the Bonds. This Court approved the Allou Settlement by order dated June 16, 2009, without prejudice to the Defendants' rights to contest liability on the Bonds.

Plaintiffs jointly filed this adversary proceeding on May 12, 2009, seeking a declaratory judgment as to the Sureties' liability on the Bonds. On May 20, 2009, the Sureties filed their answers, which included 45 affirmative defenses. One of the affirmative defenses alleged that Actrade's claims were barred by a mutual release (the "Release") contained in a 2003 settlement entered into during the Actrade Chapter 11 case between Actrade and Greenwich (the "Greenwich Settlement"). Several others alleged that the Sureties had a right of offset, of rescission, of subrogation, as well as the defense of fraud. The Defendants timely filed a jury demand "for all issues so triable" on May 29, 2009. (Dkt. No. 9)

Greenwich, but not GAIC, subsequently filed a five-count pleading asserting counterclaims and third-party claims. Three counts were based on the Release. The first claim sought a declaratory judgment against Actrade and additional counterclaim/third-party defendants that the Release applied broadly and included any liability on the Allou Bonds.[1] The

---

[1] The counterclaim/third-party defendants originally included Actrade, Actrade Technologies Ltd., John Does A through Z and various officers and employees of Actrade. (Dkt. No. 13) Greenwich has since then voluntarily dismissed its indemnity and subrogation claims against most of Actrade's former officers and employees, and the only remaining counterclaim/third-party defendants are Actrade; Actrade Technologies Ltd., which was Actrade's affiliate and co-debtor; Amos Aharoni, who was Actrade's former principal; and John Does A through Z. (Dkt. No. 105)

3

fourth and fifth counterclaims sought specific performance and damages against Actrade only, based on an alleged breach of the Release.

The Greenwich Settlement pursuant to which the Release was issued had a forum selection clause providing for this Court's exclusive jurisdiction over all disputes relating thereto.  On September 18, 2009, this Court denied the parties' cross-motions for summary judgment on the applicability of the Release, and the parties proceeded to trial, at which the sole issue was whether the Release applied.  The Court held in favor of Actrade, effectively dismissing Greenwich's affirmative defense and the three counterclaims based on the Release. *See In re Actrade Financial Technologies, Ltd.*, 424 B.R. 59 (Bankr. S.D.N.Y. 2009).

Greenwich's second counterclaim sought to impose indemnity obligations on the additional counterclaim/third-party defendants, including Actrade.  The third counterclaim sought to enforce alleged subrogation rights against the same counterclaim/third-party defendants, including Actrade.

## DISCUSSION

The issue for decision is whether the Sureties have lost their seventh amendment right to a jury trial by asserting counterclaims and affirmative defenses.

The Seventh Amendment preserves the right to a jury trial for many suits brought in bankruptcy court.  *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989); *Germain v. Conn. Nat. Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993).  Actrade's adversary proceeding against the Sureties is a suit to enforce a pre-petition contract.  There is no serious contention that this form of proceeding is not triable to a jury. See *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir. 1990) *vacated, Insurance Co. of Penn. v. Ben Cooper, Inc.*, 498 U.S. 964 (1990), *on remand*, *In re Ben Cooper, Inc.*, 924 F.2d 36 (2d Cir. 1991), stating that "when 'the insurer's liability

4

under the policy has matured, the basic issues are legal. This is true whether the insurer sues to cancel the policy and the beneficiary counterclaims for recovery on the policy, or the beneficiary sues for recovery on the policy and the insurer defends and/or counterclaims for cancellation on the ground of fraud.'" (quoting 5 *Moore's Federal Practice* ¶ 38.23, at 38-200-01 (2d Ed. 1988)). There is also no dispute that the right to a jury trial is "of constitutional concern." *Germain*, 988 F.2d at 1326-27. There is authority that "courts must indulge in every reasonable presumption against waiver of the seventh amendment right to a jury trial." *In re Data Compass Corp.*, 92 B.R. 575, 578 (Bankr. E.D.N.Y. 1988), citing *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510 (1959), *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

Notwithstanding the legal nature of this action, Plaintiffs argue that the Sureties have lost their right to a jury trial by asserting counterclaims and affirmative defenses and in effect submitting themselves to the equitable jurisdiction of this court. This contention is based on a line of cases holding that a party may lose a right to a jury trial by filing a proof of claim or taking other affirmative action in a bankruptcy case. *See, e.g., Katchen v. Landy*, 382 U.S. 323 (1966); *Langenkamp v. Culp*, 498 U.S. 42 (1990). The doctrine has been termed a waiver, but in recent years has more correctly been described as premised on the concept that the estate's claim against the creditor has been converted from legal to equitable status because it involves the "'process of allowance and disallowance of claims'" or is "integral to the restructuring of debtor-creditor relations." *Granfinanciera,* 492 U.S. at 58.

Accordingly, while it is settled that filing a proof of claim in a bankruptcy case may trigger the process of "allowance and disallowance of claims," thereby subjecting a party to the bankruptcy court's equitable jurisdiction, *Langenkamp*, 498 U.S. at 44, the Second Circuit has made it clear that filing a proof of claim is ordinarily a *necessary* but not a *sufficient* condition to

5

triggering the claims allowance process. *Germain*, 988 F.2d at 1327. Filing of a proof of claim does not automatically deprive a party of a right to a jury trial in respect of all proceedings against or involving a debtor. Rather, a party who has filed a proof of claim loses its right to "adjudicate before a jury any issue *that bears directly on the allowance* of that claim—and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity." *Id.* at 1329, citing *Granfinanciera, Langenkamp*, and *Katchen* (emphasis in original). For a conversion to take place, "the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims." *Id.* at 1330. Moreover, as the Second Circuit held in *Germain*, a creditor "who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor…" *Id.* at 1329.

### A. Counterclaims

Three of the counterclaims filed by Greenwich sought recovery based on the Release, and two sought recovery based on theories of subrogation and indemnity. The claims in connection with the Release, brought against Actrade and the other third-party defendants asserted, for instance, that Actrade had breached the Greenwich Settlement agreement, entered into by the Debtors and Greenwich during the course of these Chapter 11 cases, which provided for the Release. Under *Germain*, it cannot be contended that Greenwich "knowingly and willingly surrendered" its right to a jury trial of the instant dispute involving a prepetition contract by asserting rights under a separate, postpetition contract. *See Germain*, 988 F.2d at 1330. This is especially so as the Greenwich Settlement under which the Release was granted provided for exclusive bankruptcy court jurisdiction. Those counterclaims, which have been dismissed and

6

are no longer a part of this case, cannot be characterized as submitting the Sureties to this Court's equity jurisdiction in the determination of the instant prepetition contract dispute.

The other two counterclaims, asserting rights of subrogation and indemnity, were brought against Actrade, Actrade's affiliate and co-debtor, Actrade Financial Technologies Ltd. ("Actrade Financial"), and various of Actrade's former officers and directors. The claims for indemnity and subrogation against the officers and directors are at least comprehensible—these individuals are said to have engaged in "actionable" conduct that injured Greenwich. However, Plaintiffs do not argue that, under *Germain*, these claims against third parties submitted the Sureties to the equitable jurisdiction of the bankruptcy court.

Plaintiffs allege, however, that the counterclaims for indemnity and subrogation against Actrade and Actrade Financial result in the conversion of Plaintiff's legal claims against the Sureties into an equitable dispute involving the ranking of claims. It is admittedly difficult to deal with this argument because the counterclaims against Actrade and Actrade Financial make no sense. It is not explained how Actrade or its affiliate could be liable to the Sureties for the very liability that their successor in interest—the Actrade Liquidation Trust—is attempting to impose on them. Plaintiffs argue that the Sureties' defense of subrogation would subrogate the Sureties to Allou's claims against Actrade, and that the Sureties would thus replace Allou on the hierarchy of creditors in the bankruptcy case. Plaintiffs do not explain how the Sureties would be entitled to take Allou's place as a plaintiff in a fraudulent conveyance case. It appears that the Sureties' real indemnity or subrogation claim, if any, is that the individual third party officers and directors injured the Sureties by "actionable conduct."[2] The addition of Actrade and its affiliate appears to be poor drafting.

---

[2] Thus it is alleged that "[i]n the event that Greenwich is compelled to make any payments to the Trust as a result of the claims set forth in the First Party Complaint, Greenwich would become equitably subrogated to the rights of its

7

In any event, the subrogation and indemnity counterclaims do not affect the hierarchical reordering of creditors' claims. The plan in the bankruptcy case of Actrade and Actrade Financial was confirmed in 2004, and the priorities of distribution have been established. It is far too late for new claims to be filed against either Debtor. Even if there were a right of subrogation or indemnification, and even if the Sureties were to replace Allou in its position on the hierarchy of creditors, the hierarchical reordering of creditor's claims would not be affected. The Sureties' claims for indemnification and subrogation could not result in any recovery over and above any amounts that the Sureties might have to pay under the Bonds. Moreover, the Actrade Debtors have already paid all creditors' claims, and Plaintiffs have not identified a real issue relating to the reordering of claims sufficient to deny the Sureties their right to a jury trial now. *See Germain*, 988 F.2d at 1329 n.7 (refusing to consider a "future" equitable subordination claim for purposes of determining whether there was a jury right in that case).

The Court stressed in *Germain* that in considering whether a jury right had been lost, it was important whether the party had filed a proof of claim. It said, "[t]he very phrase 'claims-allowance process' suggests that the resolution of the dispute in which a jury trial is sought must affect the *allowance* of the creditor's claim in order to be part of that process." *See Id.* at 1327 (emphasis supplied). Here, the Sureties did not file any proofs of claim remotely related to the instant dispute. Plaintiffs' response, that Greenwich's counterclaims seek to render one of Actrade's most valuable assets, the Bonds, worthless, and thereby constitute consent to the equity jurisdiction of this Court, is without merit. The possibility that a recovery by Plaintiffs under the Bonds would increase the value of the Actrade estate does not mean that the claims

---

bond principal and obligee, Allou and Actrade, respectively, with respect to such payment(s), the claims asserted in the First Party Complaint, and the Alleged Fraudulent Transfers. As subrogee of Allou and Actrade, Greenwich would be entitled to pursue any and all claims and/or rights that Allou and Actrade may have against McCormick and the other Additional Counterclaim / Third-Party Defendants with respect to such payment(s), the claims asserted in the First Party Complaint, and the Alleged Fraudulent Transfers."

allowance process has been triggered. *See Germain*, 988 F.2d at 1327, holding that "suits like the Trustee's action in this case which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process."

### B. Affirmative Defenses

The Sureties also filed four affirmative defenses that, Plaintiffs argue, caused them to lose their right to a jury trial. The affirmative defenses of fraud and rescission asserted by the Sureties in their eighteenth, twenty-first, and twenty-second affirmative defenses are purely defensive and do not affect the process of the allowance or disallowance of claims. There is no authority that they would submit the Sureties to the equitable jurisdiction of this Court.

Plaintiffs' further cite to the Sureties' twenty-ninth and thirty-ninth affirmative defenses of setoff. There is authority that the assertion of a right of setoff can trigger the claims-allowance process to the extent that a right to jury trial may be lost. In *In re Iridium Operating LLC*, 285 B.R. 822, 833 (S.D.N.Y. 2002), the Court held that the assertion of a right of setoff could constitute a claim against the debtor's estate, whether asserted as an affirmative defense or counterclaim. In *Iridium*, however, the creditor asserting a right of setoff was "intimately involved with the bankruptcy proceedings" and had "filed several proofs of claim, several claims for administrative expenses", and its relationship to the bankruptcy proceeding involved "more than simply a possible effect on the ultimate size of the bankruptcy estate." *Iridium*, 285 B.R. at 835. Furthermore, the creditor's offset rights did not arise out of the contract on which the debtor relied for its cause of action. This is clear from the *Iridium* Court's citation to *North American Energy*, where the Court reasoned that a setoff claim takes on particular importance in the context of bankruptcy as it, in effect, "elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim" against the party asserting setoff," as was

9

the case there. *In re North American Energy Conservation, Inc.*, 2000 WL 1514614 (S.D.N.Y. October 12, 2000).

In contrast to *Iridium* and *North American Energy*, the Plaintiffs in this case cannot demonstrate that the Sureties have any right of affirmative recovery against Actrade that is independent of the claims brought against them by Actrade.  If the Sureties have a defense in the nature of setoff, it would arise from the same prepetition contract on which Actrade bases its claims and would more correctly be termed a right of recoupment.  As the Court said in *In re Concept Clubs, Inc.*, 154 B.R. 581, 789 (Bankr. D. Utah 1993), when a setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to strike the Sureties' jury demand is denied. The Sureties are directed to settle an appropriate order on five days' notice.

Dated:  August 23, 2010
       New York, New York

                                */s/ Allan L. Gropper*_____
                                UNITED STATES BANKRUPTCY JUDGE